# EXHIBIT 1
## to Notice of Removal

| Approved, SCAO | Original - Court of Appeals/Circuit Court<br>1st copy - Trial court | JIS CODE: COA<br>2nd copy - Appellee<br>3rd copy - Appellant |
|---|---|---|

| STATE OF MICHIGAN<br>JUDICIAL ☐ CIRCUIT ☐ DISTRICT<br>COUNTY<br>☐ IN THE COURT OF APPEALS | CLAIM OF APPEAL | CASE NO.<br>CIRCUIT<br>DISTRICT 09-2146-AA<br>PROBATE |
|---|---|---|

**Court address**
State Office of Administrative Hearings and Rules 608 West Allegan Street PO Box 30008, Lansing, MI 48909   **Court telephone no.** (517) 373-8772

| Plaintiff/Petitioner name(s) and address(es) ☑ Appellant<br>☐ Appellee<br><br>James and Paula Fitzsimons on behalf of Matthew<br>Fitzsimons | v | Defendant/Respondent name(s) and address(es) ☐ Appellant<br>☑ Appellee<br><br>Richmond Community Schools |
|---|---|---|
| Attorney, bar no., address, and telephone no.<br>65845 Kuster Road<br>Lenox, MI 48050 | | Attorney, bar no., address, and telephone no.<br>Michelle Eaddy<br>Thrun Law Firm<br>P.O. Box 2575<br>East Lansing, MI 48826- |

BIERNAT P-10793

☐ Probate   In the matter of _____
Other interested party(ies) of probate matter

1. Paula and James Fitzsimons _____, claims an appeal from a final judgment or order entered on
   **Name**
   04/21/2009 _____ in the SEH 09-02 _____ Court of the State of Michigan,
   **Date**                **Court name and number or county**

   by ☐ district judge   ☐ circuit judge   ☐ probate judge   ☐ district court magistrate

   Lauren S. Harkness, Administrative Law Judge
   **Name of judge or district court magistrate**                **Bar no.**

2. Bond on appeal is ☐ filed.   ☐ attached.   ☐ waived.   ☑ not required.
3. ☐ a. The transcript has been ordered.
   ☐ b. The transcript has been filed.
   ☐ c. No record was made.
☐ 4. THIS CASE INVOLVES A CONTEST AS TO THE CUSTODY OF A MINOR CHILD.

04/29/2009
**Date**
65845 Kuster Road                    Lenox, MI 48050                    (586) 727-0607
**Address**                          **City, state, zip**               **Telephone no.**

---

**PROOF OF SERVICE**

I certify that copies of this claim of appeal and bond (if required) were served on

| Lisa Collins | on 04/29/2009 | by | ☑ personal service.<br>☐ first-class mail. |
|---|---|---|---|
| **Name** | **Date** | | |
| Michelle Eaddy | on 04/29/2009 | by | ☐ personal service.<br>☑ first-class mail. |
| **Name** | **Date** | | |
| Patrick Bird | on 04/29/2009 | by | ☐ personal service.<br>☑ first-class mail. |
| **Name** | **Date** | | |

04/29/2009
**Date**                                                  **Signature**

MC 55  (5/07)  CLAIM OF APPEAL                    MCR 4.401(D), MCR 7.101(C), MCR 7.204(D)

**STATE OF MICHIGAN**
**STATE OFFICE OF ADMINISTRATIVE HEARINGS AND RULES**

In the matter of                                     Docket No.  2009-43

James and Paula Fitzsimons on              Agency No.  SEH 09-02
Behalf of
Matthew Fitzsimons
    Petitioner                                   Agency:      Department of
                                                                           Education
v
                                                                Case Type:  Appeal
Richmond Community Schools,
    Respondent
_____/

Issued and entered
this 21st day of April, 2009
by Lauren S. Harkness
Administrative Law Judge

**DECISION AND ORDER**

**PROCEDURAL HISTORY**

    This case was filed with the Michigan Department of Education (MDE) in early
December of 2008.  The MDE interpreted the petitioners' letter as a request for a formal
state complaint investigation rather than a due process hearing request.   On or about
January 6, 2009, petitioners supplied written verification to the MDE that their written
request had been for a due process hearing.[1]  The MDE transmitted the hearing request
to the State Office of Administrative Hearings and Rules on January 7, 2009.

    Petitioners' hearing request sought review of a determination made by
respondent pursuant to the provisions of the Individuals with Disabilities Education Act

---

[1]  The new placement was to have been instituted on January 5, 2009.  Thus, the
receipt date posed an obstacle to petitioners' right to a pendency or stay-put placement
at the local school.  Student was permitted to continue attending this school because of
respondent's forbearance on this matter.

Docket No. 2009-43 – Agency No. SEH 09-02
Page 2

(IDEA). 20 USC 1400 *et seq.* Petitioners' hearing request asserted that respondent had reached a determination at their son Matthew's (Student) most recent IEP meeting that was in contravention of the IDEA requirements that children covered by IDEA be afforded a free and appropriate education (FAPE) in the least restrictive environment (LRE). More specifically, petitioners claimed that respondent proposed to change Student's placement from a placement in his neighborhood school to a center-based program some considerable distance away that had no services that could not have been provided at his local school and that afforded him less opportunity to interact with his non-disabled peers.

A telephonic prehearing conference was convened on February 6, 2009. Hearing dates were set for later in March, 2009, and the time line for rendering this decision was extended to April 21, 2009. The hearing was convened on March 23 and 24, 2009. Ten witnesses were called to testify at the hearing. They were:

Petitioner-mother

Anne O'Connor, special education teacher

Kathleen Campau, general education teacher

Kathleen Yoder, physical therapist, Macomb Intermediate School District

Karen Bosman, paraprofessional

Susan Vella, prior year special education teacher

Becky Borwick, school employee

Lisa Robertson, speech therapist

Kara Brooklier, licensed psychologist

Daniel Simeck, POHI program supervisor

Docket No. 2009-43 – Agency No. SEH 09-02
Page 3

Tracie Biondo-Turner, speech pathologist

Nancy Maro, paraprofessional

Lisa Collins, special education director

Several exhibits were admitted into evidence during the hearing. Exhibits offered by petitioners were identified as "P-#." Those offered by Respondent were marked as "R-#." The items received were: P-1 through P-10, P-12 through P-19; R-1 through 10, R-13, R-15, R-21, R-23, R-25 and R-26, p 442-449, 477-478, 502-518. A description of each exhibit appears at the front of the relevant transcript volume.

## ISSUE AND APPLICABLE LAW

Have petitioners shown that respondent failed to afford Student with an educational placement that was reasonably calculated to allow him to gain meaningful educational benefit in light of his individual capacity and that placed him in the least restrictive appropriate environment?

The petitioner-parents, as the party challenging the District's determination or implementation of special education and related services, have the burden of proof by a preponderance of the evidence for all claims raised in this matter. *Schaffer v Weast,* 546 US 49; 126 S Ct 528; 163 L Ed 2d 387 (2005); Doe v *Defendant I,* 898 F2d 1186 (CA 6, 1990).

A school district is required to ensure that a disabled student is educated to the maximum extent appropriate with children who are non-disabled. Removal of a disabled student from the general education environment is to occur only if the "nature or severity of the student's disability" is such that education in the general education classroom with the use of supplementary aids and services cannot be achieved

Docket No. 2009-43 – Agency No. SEH 09-02
Page 4

satisfactorily. 20 USC 1412(a)(5)(A); 34 CFR 300.114. The first placement option that

an IEP team must consider is a general education classroom with sufficient aids and

supports to make that placement viable for that individual student. Federal Register,

Vol. 71, No. 156, at p. 46588.

The Sixth Circuit has found that the Act's requirement that mainstreaming[2] be

provided to the *maximum* extent appropriate indicates a "very strong congressional

preference" for the placement of disabled students in the general education

environment. *Roncker v Walter,* 700 F2d 1058, 1063 (CA 6, 1983), (emphasis in

original). The Act does not require mainstreaming in every case, however. *Roncker*

lists three situations in which the least restrictive environment is not an appropriate

placement choice: 1) when a disabled student would not benefit from mainstreaming, 2)

when any marginal benefits derived from mainstreaming are outweighed by benefits

gained from services which cannot feasibly be provided in the general education

environment, or 3) when the student is too disruptive to the education of the other

general education students. The Sixth Circuit has further held that the least restrictive

environment requirement does not equate to a requirement that a child be educated in

his or her neighborhood school. Indeed, if the amount of access to the general

education setting is not disputed, the least restrictive environment mandate is not a

relevant consideration. See *McLaughlin v Holt Public Schools Brd of Educ,* 320 F3d

663 (CA 6 2003)

---

[2] The use of the term "mainstreaming" reflects the goal of integrating disabled students
either fully or partially into general education environments. The LRE mandate often
requires more exacting consideration of a continuum placement arrangements that
favor, however incrementally, inclusion of children with disabilities in the wider school
population.

Docket No. 2009-43 – Agency No. SEH 09-02
Page 5

**FINDINGS OF FACT**

1. Student is an 11 year old boy. He, his parents and his siblings live together[3] within the territory served by respondent school district.

2. Student had a near drowning accident as a two year old. He began receiving special education services at three years of age. Tr I p. 25. There is no dispute that Student is a child with a disability and remains eligible for special education programs and services.

3. Student has multiple impairments as a result of his accident. The Multidisciplinary Evaluation Team (MET) report conducted when Student was five years old indicated that Student's language skills were commensurate with an infant of three to nine months old. His gross motor development was likewise consistent with the level typically seen in children under one year old. The report recited that Student's development rate was three or more standard deviations below the mean or that Student's cognitive ability could not be validly measured by an evaluation instrument. The report also stated that Student's physical impairment was so severe that activities of daily living could not be achieved without assistance. P-16. Three years later, respondent's next MET report concluded that Student continued to have significant difficulties in cognition, language and physical function. P-18  The same conclusion was reached in 2008. These last two determinations were reached with the team members' agreement that no additional evaluation data was needed to determine Student's continued eligibility. P-12, P-18.   He is classified as a child with a disability under the designation of severely multiply impaired.

---

[3] One or two of Student's older siblings reside at the location of their college or university while classes are in session.

Docket No. 2009-43 – Agency No. SEH 09-02
Page 6

    4.  Student was nominally in the fifth grade when the 2008 MET report was created in November of that year.  A proposed IEP was developed at about the same time. The Present Level of Academic and Functional Performance (PLAAFP) statement from the November, 2008 IEP indicates that Student was not able to identify letters or numerals on a consistent basis.  Student was able to identify colors and numerals with 50% accuracy when provided an array of 4 possible answers.  Student's visual motor skills were pegged at about level with a 2 year, 11 month old typically developing child. Student displayed an expressive language vocabulary of 5 to 8 words at school. Further, about 25% to 50% of Student's expressive output was understandable to a listener when the context was known.  If the context was not known, less than 10% of Student's verbal output was understandable.   Socially, Student was described as a happy, enjoyable and friendly child.  He was very highly distractible and he, thus, had difficulty focusing on his school work.  P-13.

    5.  In the physical domain, the November 2008 IEP described Student as having severely impaired motor integration skills.  The report indicated that Student has spastic quadriplegia and cerebral palsy stemming from the near drowning accident.  He needed assistance from a paraprofessional for transfers, mobility, self-care, toileting and activities of daily living.  P-13.  Student's records show that he is not toilet-trained and he wears an incontinence pad with a pull-up [disposable diaper.]  He is assisted to the bathroom three times a day at school with 10 to 20 minutes allotted for each trip.[4]  P-1. He, nevertheless, soaks through to his trousers on a regular basis requiring staff to take him out of the classroom to change his clothing.  Student is able to doff his coat and

---

[4]  Student's classroom teacher indicated that Student is taken to the bathroom five times a day.  Tr I p. 149.

Docket No. 2009-43 – Agency No. SEH 09-02
Page 7

offer his hand in greeting. He can place objects atop his head and does so as a display

of humor. P-17. Student is able to walk with a Gait Trainer walker but he moves

unsteadily and at a slow rate. His goals for mobility have included goals for walking 400

feet and improving his speed so that he can travel this distance in 10 minutes. He

continues to need a staff member close by to assist him with balance lapses and with

directional control. P-14. A significant proportion of Student's instructional time is lost

to his toileting needs and his slow rate of movement between class locations.

6. Student's placement under the IEP implemented one year prior to the IEP in

dispute here included Student in the general education setting from one-third to one-half

of the school's instructional week. Tr I p. 28-29. The remainder of Student's schedule

placed him in a special education classroom providing instruction geared toward

teaching mildly cognitively impaired pupils. This program was provided by respondent

at the district's only elementary school. Student moved to the district's middle school

with his classmates in the fall of 2008 under this IEP because its full one-year term

would not end until November.

7. The November 2008 IEP proposed to change Student's placement from the

program at the middle school operated by respondent to a center-based program

serving the needs of pupils with physical or other health impairments (POHI). This

center-based program was operated by Macomb Intermediate School District at a

school building in the Warren Woods School District. P-13

8. The center-based POHI program is about a 45 minute drive away from

petitioners' home. Respondent would transport Student to and from the POHI program.

Student would ride, apparently as the only passenger, in a lift-equipped school bus to

Docket No. 2009-43 – Agency No. SEH 09-02
Page 8

and from the POHI program. Tr II p. 400-401.

9. The new proposed placement would decrease Student's inclusion in general education settings to a range of one-sixth to one-third of his school time. The remainder of Student's school time would be in special education and more specifically in a program serving POHI needs.[5] P-13

10. The disputed IEP would permit Student's use of paraprofessional assistance for toileting, moving about the building with his walker and completing activities of daily living. The disputed IEP indicates that his performance levels dictate that he have paraprofessional assistance for actual instruction and for daily living needs. The testimony shows that Student did have an aide's help for classroom work at respondent's schools. That is, the aide gave Student's prompts to get him started working, to refocus him and to continue working. The aide also helped to deliver instruction to Student. Tr I p. 61, 136. Student was not the scrivener of any of his written work. Rather, the aide worked hand-over-hand with Student to produce Student's papers and projects. Tr II p. 248-249. The new IEP appears to eliminate such hand-over-hand assistance. P-13 p. 3.

11. Student's teachers testified and provided written performance summaries to petitioners showing Student's motor skills deficits rendered him unable to use arm or hand movement to show his apparent choice among just a few alternatives. The visual fields needed to be large enough and close enough to him to allow him to reach and to touch just one without accidentally brushing an adjacent choice. Even when this type of

---

[5] The document appears to indicate that Student's placement will involve an assignment to a mildly cognitively impaired classroom as well. A closer reading of the handwritten information shows that the mildly cognitively impaired placement was to last only for two weeks while the center-based program staff observed him. P-13 p. 7 and 9.

Docket No. 2009-43 – Agency No. SEH 09-02
Page 9

arrangement was provided, Student's performance on such exercises sometimes fell

below the performance expected from random choice.   Tr I pp.77; R-6.

12.  The independent evaluator who assessed Student in October of 2008 and

Student's fifth grade teacher, Ms. O'Connor, reported that Student's level of substantive

educational functioning is below that of a kindergarten pupil.  This performance level

does not approach the achievement level of even the other pupils in the mildly

cognitively impaired classroom.  Ms. O'Connor indicated the performance level for the

other pupils in her classroom ranged from second grade level through fifth grade level.

Ms. Connor and other teachers reported that Student is not genuinely receiving or

benefiting from instruction in the curriculum presented in their classrooms.  These

observers further reported that the other pupils in Student's classes are patient with

Student and accepting of him.  They interact with him upon their own initiation but there

is scant social or friendship based interaction.  Tr I pp. 79-80, 152, 181-183, 188-189; Tr

II p. 310-311, 400-401; R-13; R-15.

13.  Petitioners question the veracity of Student's teachers on this point noting

that their periodic reports of Student's progress switched from "satisfactory" to findings

of "insufficient progress" at about the time Student was to begin attending middle

school.  Compare P-4 and P-6.  Petitioners further object that in September of 2008,

Student's fifth grade teacher had provided a written statement in support of a class size

deviation request that asserted that all her pupils' needs were being met.  P-5.  This

second variance may be telling but it is insufficient to outweigh the substantial evidence

to establish that Student was not, in fact, an actual participant in the classroom

Docket No. 2009-43 – Agency No. SEH 09-02
Page 10

instruction provided to him. Tr I pp 149-176, 227. Indeed, Student's aide did what ever paper and pencil work that was attributed to him. R-15, R-25, R-26.

14. Various witnesses and reports have indicated that the time away from the instructional setting required by Student's bathroom and mobility challenges adversely impacts his education. Petitioners assert that respondent's alleged failure to completely implement Student's mobility regime shows that respondent has not allowed Student to overcome the gross motor skill obstacles that may have prevented him from benefiting from the curriculum. Petitioners further claim that respondent did not actually include Student in general education curriculum and instruction to the extent required by the 2007 IEP. This shows, according to petitioners, that respondent has not met its LRE obligation. On the contrary, the difficulty with Student's progress or lack thereof, is not that he missed the academic lessons. Tr I p. 30-32. Rather, there are two overarching difficulties. First, Student has not grasped the lessons presented to him in either the general education setting or in the mildly cognitively impaired setting. Second, Student lacks a means to consistently communicate with those around him. P-17. Student did not display any ability to independently provide a yes/no response to his speech therapist for the 2008-2009 school year until mid March of 2009. Tr II p. 283. Respondent has introduced Student to many assistive technology devices to help him express himself but these trials have not been successful. To date, no communication technique or device has been identified that will function for Student or that can be reinforced by use in petitioners' home. P-17. Thus, the proposed IEP at issue here specified that Student's speech and language therapy would focus on establishing a functional communication system. P-13 p. 3.

Docket No. 2009-43 -- Agency No. SEH 09-02
Page 11

15. The center-based POHI program is staffed by three speech therapists. One of these individuals specializes in the identification and provision of appropriate assistive technology to assist students with communication deficits.  Tr II pp 315-316.

16. The center-based POHI program proposed by respondent is designated as a middle school with grades six through eight.  It is housed in a building that also includes general education middle school classes.  Thus, the proposed placement will allow Student to have exposure to non-disabled pupils in a classroom setting because the new IEP requires that he will participate in general education for at least one-sixth of his school week.

17. The center-based POHI program has the capacity to provide instruction at a wider grade range than does respondent's middle school.  Although the program administrator testified that he was unsure whether his program had any pupils functioning at a pre-academic level as opposed to kindergarten or first grade level, the center-based staff observed Student at respondent's facility and they determined that it would be no problem to meet Student's cognitive and communication needs at the POHI program.  Tr II pp. 324-326.

**DISCUSSION**

The first of the three countervailing considerations created in *Roncker* is evident here.  That is, Student is not now at a point where he can benefit cognitively or socially from his placement at respondent's middle school.  The proposed program is reasonably calculated to provide instruction at a level that could reach Student's *bona fide* cognitive needs and could permit Student to acquire a functional communication system.

Docket No. 2009-43 – Agency No. SEH 09-02
Page 12

## CONCLUSION OF LAW

The preponderance of the evidence failed to support petitioners' claims that the educational program planned for Student was in contravention of the least restrictive environment requirement where the record shows that Student was not able to benefit from a less restrictive environment.

### ORDER

**NOW THEREFORE IT IS ORDERED** that petitioners' complaint is denied.

A party aggrieved by this decision may seek judicial review by filing an action in a court of competent jurisdiction within 90 days of the date of this order.

Lauren S. Harkness
Administrative Law Judge

Docket No. 2009-43 -- Agency No. SEH 09-02
Page 13

## PROOF OF SERVICE

I hereby state, to the best of my knowledge, information and belief, that a copy of the foregoing document was served upon all parties and/or attorneys of record in this matter by Inter-Departmental mail to those parties employed by the State of Michigan and by UPS/Next Day Air, email, facsimile, and/or by mailing same to them via first class mail and/or certified mail, return receipt requested, at their respective addresses as disclosed by the file on the 21st day of April, 2009.

_Shirley Dacus_

Shirley Dacus
State Office of Administrative Hearings and Rules

Mr. and Mrs. James Fitzsimmons
65845 Kuster Rd.
Lenox, MI  48050

Ms. Michelle R. Eaddy
THRUN LAW FIRM, P.C.
2900 West Rd. Ste. 400
East Lansing, MI  48823-1391

| 2009-002145-AA FITZSIMONS, MATTHEW vs. RICHMOND COMMUNITY SCHOOLS JMB | | | | |
|---|---|---|---|---|

| **File Date** | 05/01/2009 | **Case Status** | Open | **Case Status Date** | 05/01/2009 |
|---|---|---|---|---|---|

## Party Information

| Party Name | Party Alias(es) | Party Type | Attorney(s) | Attorney Phone |
|---|---|---|---|---|
| FITZSIMONS, MATTHEW | FITZSIMONS, JAMES<br>FITZSIMONS, PAULA | APPELLANT | PRO PER | 0000000000 |
| RICHMOND COMMUNITY SCHOOLS | | APPELLEE | | |

## Docket Entries

| Date | Text | |
|---|---|---|
| 05/01/2009 | EXHIBIT(S) ATTACHED TO COMPLAINT | — |
| 05/01/2009 | ENTRY FEE | — |
| 05/01/2009 | CLAIM OF APPEAL FILED | — |
| 05/01/2009 | COMPLAINT/PETITION FILED | — |